UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KENNETH AND FRAN MOREE | CIVIL ACTION |
| VERSUS | NO. 22-2829 |
| CHEVRON PIPELINE COMPANY, ET AL | SECTION: "J"(5) |

## ORDER AND REASONS

Before the Court is a *Motion for Partial Summary Judgment* **(Rec. Doc. 96)** filed by Plaintiffs, Kenneth and Fran Moree; an opposition (Rec. Doc. 103) filed by Defendant, Chevron Pipe Line Company ("Chevron"); and a reply (Rec. Doc. 104) filed by Plaintiffs. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED.**

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of an October 24, 2019 incident in which Plaintiff Kenneth Moree alleges he was injured at Chevron's Empire Terminal in Buras, Louisiana. Mr. Moree was employed by Bozeman, Inc. d/b/a Wastewater Treatment Systems & Operations ("WTSO") and was assigned to service a potable water tank weekly at the Empire Terminal starting in November 13, 2013. Each week, Mr. Moree provided chlorination and fecal coliform sampling for the holding tank. Mr. Moree alleges that, on October 24, 2019, the potable water tank exploded while he was servicing it, throwing him against the piping in the tank shed and causing serious injuries.

In the instant motion, Plaintiffs request that the Court find that Mr. Moree

1

was not a statutory employee of Chevron. However, the parties provide divergent accountings of the number of contracts between WTSO and Chevron and which contract governed Mr. Moree's work at Chevron:

(1) Chevron points to a 2008 Blanket Service Agreement ("BSA") designating WTSO's employees as Chevron's statutory employees. (Rec. Doc. 103, at 4). Plaintiffs argue that this contract was for WTSO to service a sewage treatment plant at a different Chevron facility in Sorrento, Louisiana, not the Empire Terminal where Mr. Moree was injured. (Rec. Doc. 96-1, at 3).

(2) Plaintiffs point to a 2011 "Service Contract for Wastewater Treatment Plant," which required WTSO to maintain the wastewater system at Empire and which Chevron terminated in 2014. (Rec. Doc. 96-1, at 2). This contract does not designate Chevron as a statutory employer. *Id.* Chevron does not mention this contract in its opposition memorandum.

(3) Plaintiffs also point to a "Service Contract for Potable Water Holding Tank" dated October 19, 2013, which they argue is applicable here, and which required WTSO to service the potable water tank. (Rec. Doc. 96-1, at 2). This contract also does not designate Chevron as a statutory employer. *Id.*

(4) Chevron recognizes the 2013 Service Contract but states that, after the 2013 Service Contract, Chevron annually contracted with WTSO pursuant to new Service Orders for their continued service and maintenance of the potable water treatment system at the Empire Terminal. (Rec. Doc. 103, at 5).

2

(5) Chevron points to a December 9, 2018 Service Order ("2019 Service Order") that authorized WTSO to provide weekly maintenance of the potable water tank, which adopted and incorporated the terms and conditions of the 2008 BSA, including the statutory employer language. (Rec. Doc. 103, at 5).

The parties also point to contradictory statements from Lauren Junot, WTSO president, in a June 13, 2022 affidavit and a December 18, 2023 deposition. In the affidavit, Junot "attested to the applicability of the 2019 Service Order to the work WTSO—and Kenneth Moree—performed at the Empire Terminal on October 24, 2019." (Rec. Doc. 103, at 5). However, in her deposition, Junot stated that she did not have personal knowledge of the 2008 BSA or the 2019 Service Order. (Junot Deposition, Rec. Doc. 96-4, at 12-14). She also stated that she did not review the affidavit before signing it, "but after speaking with my counsel, then I realized that what I signed was not what I needed to sign, and I didn't know what statutory employer meant." (Junot Deposition, Rec. Doc. 103-2, at 102-103). She went on to testify that,

> [A]fter reviewing everything with my counsel, I did not have this other thing that Roydan Bozeman signed. · I don't have all the whatever in front of me. · But what I do have, with the BSA and this changed order, after speaking with him, he advised that this – I signed something that I should not have signed because it did not – that's up for the Courts to decide.
>
> Q. · So are you saying that your discussions with your attorney since signing this affidavit have changed your opinions on the contents of the affidavit?
>
> A. Yes.
>
> Q. That it's no longer true and correct?

3

   A. Yes.

(Rec. Doc. 103-2, at 103).

Chevron also points to an affidavit from Curt Chaisson, the Operations Manager of the Gulf Coast Area for Chevron. (Rec. Doc. 103-1). Chaisson's affidavit states that Mr. Moree's work on October 24, 2019 was required by the 2019 Service Order. *Id.* at 2.

Plaintiffs filed suit against Chevron, as well as other defendants, in the 25th Judicial District Court for Plaquimines Parish, and Defendant Pulsafeeder Inc. removed the case to this Court on August 23, 2022 on the basis of diversity. Chevron filed a motion for summary judgment regarding its status as the statutory employer on November 28, 2023 but withdrew the motion. (Rec. Doc. 94). Plaintiffs filed the instant motion on January 24, 2024. (Rec. Doc. 96)

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but

4

a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

Plaintiffs contend that there are no genuine issues of material fact in dispute because a trier of fact could not, on the evidence presented, find that the contracts between Chevron and WTSO demonstrate that Chevron was Mr. Moree's statutory employer. Specifically, Plaintiffs submit that the work Mr. Moree was performing when he was injured was governed by the terms of the 2013 Potable Water Contract, and this contract has no statutory employer language in favor of Chevron, and Chevron has no contract with another entity under the "two-contract" statutory employer theory. (Rec. Doc. 96-1, at 3).

The Louisiana Worker's Compensation Law provides the exclusive remedy against employers for employees injured in the course and scope of their employment. La. Rev. Stat. § 23:1032. Immunity from tort liability extends to principals that contract with another entity to perform part of the principal's work, in which case the principal is a "statutory employer." *Id.* at § 23:1061. A principal can be a statutory employer in two ways: (1) under the "two-contract" theory, where the principal is in the middle of two contracts or (2) if the principal procures work with a written contract expressly recognizing the principal as a statutory employer. *Id.* The party asserting the statutory employer defense has the burden of proof. *Walls v. Am. Optical Corp.*, 740 So. 2d 1262, 1267 (La. 1999) (citing La. C.C. P. art. 1005).

Thus, in this case, Chevron bears the burden of proof at trial that it is entitled to statutory employer status. Chevron argues that a genuine issue remains regarding which contract governed WTSO's work at the Empire Terminal at the time of Mr. Moree's injury, thus precluding any determination of its statutory employer status. (Rec. Doc. 103, at 12-13).

The Court agrees that, based on the evidence presented here, genuine issues of material fact regarding Chevron's statutory employer status remain. Specifically, the multiple contracts that may apply here plus the contradictory affidavit and testimony from WTSO's president show the existence of a genuine issue as to whether a written contract recognizing Chevron as a statutory employer applied to the work and injuries in this case. Even without weighing the credibility of the witnesses, the Court cannot determine from the evidence in the instant motion that Mr. Moree was

6

not a statutory employee of Chevron or that Chevron is not immune from tort liability in accordance with Louisiana law. Thus, the Court will not grant judgment as a matter of law. Accordingly,

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' *Motion for Partial Summary Judgment* **(Rec. Doc. 96)** is **DENIED.**

New Orleans, Louisiana, this 13th day of March, 2024.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE